2017 PA Super 4

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EDWARD ROCHE | : | |
| | : | |
| Appellant | : | No. 407 MDA 2016 |

Appeal from the Judgment of Sentence January 8, 2016
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0002430-2014

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS[*], P.J.E.

OPINION BY STEVENS, P.J.E.:                **FILED JANUARY 04, 2017**

Appellant James Edward Roche appeals from the judgment of sentence entered in the Court of Common Pleas of Luzerne County on January 8, 2016, at which time he received consecutive terms of life imprisonment following his convictions of two counts of first-degree murder. Appellant also received two consecutive terms of two hundred forty (240) months to four hundred eighty (480) months in prison for his convictions of conspiracy to commit criminal homicide.[1]  After careful review, we affirm.

On April 21, 2014, Appellant and his girlfriend, Holly Ann Crawford, shot and killed seventy-three year old Ronald "Barney" Evans and his forty-

---

[1] 18 Pa.C.S.A. § 2502(a) and 18 Pa.C.S.A. § 903, respectively.

[*] Former Justice specially assigned to the Superior Court.

three year old son Jeffrey Evans in their home located in Hunlock Creek, Pennsylvania. At the jury trial which commenced on November 2, 2015, numerous witnesses testified regarding Appellant's anger toward Ronald Evans, with whom Ms. Crawford had been involved romantically, and his history of violence.[2]

Prior to trial, on February 24, 2015, Appellant filed his Omnibus Pre-Trial Motion wherein he attempted, *inter alia*, to suppress oral and written statements he had made to police on April 23, 2014. Following a suppression hearing held on February 26, 2015, the suppression court denied Appellant's motion on March 20, 2015.

At trial, Ms. Crawford's mother, Moya Linde, explained that on the evening of April 21, 2014, Appellant was at her home with Ms. Crawford and Ms. Crawford's daughter, Alexa Balma. Appellant and Ms. Crawford were consuming alcohol and watching a violent movie, *The Boondock Saints*, at which time Appellant became extremely angry and began exclaiming he was going to kill Ronald Evans.[3] N.T. Trial, 11/2/15, at 108-110. Ms. Linde testified that Appellant had repeatedly expressed his animosity toward and

---

[2] Ms. Crawford was tried separately and convicted of two counts each of First-Degree Murder and Criminal Conspiracy. This Court recently denied her appeal from her judgment of sentence. **See Commonwealth v. Crawford**, 2016 WL 7239827 (Pa.Super. Dec. 14, 2016) (unpublished memorandum).

[3] Appellant would later testify that a character in the movie reminded him of Ronald Evans.[3] **Id**. at 640.

desire to kill Ronald Evans prior to this time. *Id*. at 107. Ms. Linde stated that Appellant proceeded to leave the home with his gun slung over his shoulder, and Ms. Crawford went with him. *Id*. at 116-17. Ms. Linde observed that although Appellant had been drinking, he spoke clearly and left of his own volition. *Id*. at 135-36. She also related that he "[h]olds his liquor." *Id*. at 110.

Ms. Balma corroborated Ms. Linde's testimony regarding Appellant's behavior on April 21, 2014, and his past expressions of wanting to kill Ronald Evans. *Id*. at 143-47, 153. She also stated she had heard Appellant utter his intent "to rush over there right now and put a bullet in [Ronald Evans'] head." *Id*. at 146. To this, Ms. Crawford replied, "We should get Jeff, too. He deserves to die. No one would miss him." *Id*. The pair then drove away together from Ms. Linde's home. *Id*. at 147.

On April 23, 2014, Appellant and Ms. Crawford told Ms. Balma they were going to Philadelphia, at which time they left with Ms. Linde's car and bankcard. *Id*. at 149. Ms. Linde immediately cancelled her bankcard and reported to police that her car had been stolen. Shortly thereafter, Appellant and Ms. Crawford returned when they discovered they could not get any money and then fled into the woods near Ms. Linde's home when they learned Ms. Linde had called the police. *Id*. at 150-51.

Officers ultimately discovered Ronald and Jeffrey Evans in their home shot to death. Upon his examination of the scene and the victims' wounds, Pennsylvania State Police Trooper James Shubzda opined that they had been

attempting to escape when they were shot. *Id*. at 200-12, 226-28, 238-40. Trooper Shubzda also remarked that after killing Ronald and Jeffrey Evans, Appellant and Ms. Crawford took a wooden display case containing a knife collection from the Evans' house. *Id*. at 205-06.

Forensic Pathologist Dr. Gary Ross testified a total of ten shots had been fired at the scene, nine of which penetrated the victims' bodies. Specifically, Ronald Evans suffered four gunshot wounds that had been fired from a distance. One shot entered from the front, one entered from the side, and two entered his back. *Id*. at 556-63. Jeffrey Evans suffered a gunshot wound behind his right ear, three bullets entered his back, and one penetrated his midline. Dr. Ross opined that each of the wounds the victims sustained was to a vital part of his body which independently could have caused death. *Id*. at 565-73.

Eventually, a Pennsylvania State Police helicopter spotted Appellant and Ms. Crawford lying on the ground in a heavily wooded area behind Ms. Linde's home. *Id*. at 77-80. Officers discovered a cloth rifle bag partially concealed under some leaves, a rifle with a scope, and a red towel within which a revolver had been wrapped. *Id*. at 269-70. Three bottles of alcohol also were found in the area. One bottle was empty, one was almost full and the other was filled with orange fluid. *Id*. at 278-79.

As will be discussed in more detail *infra*, Corporal Christopher King testified that following his arrest, Appellant waived his ***Miranda***[4] rights, and admitted to shooting Ronald and Jeffrey Evans following a confrontation at their home. Appellant indicated he shot the men because they were armed, although he admitted he shot Jeffrey Evans in the back, emptying all but one round from the clip. ***Id***. at 418-495.

Appellant testified in his own defense at trial. Appellant explained that on April 21, 2014, he had been drinking and watching a movie with Ms. Crawford when the two decided to go the Evans' house to retrieve Ms. Crawford's purse which contained her medication and money. ***Id***. at 615-617, 629-30. Ms. Crawford entered the home, and Ronald Evans exited soon thereafter waving a handgun. ***Id***. at 619. When Ronald Evans pointed the pistol at Appellant, the latter "panicked," crouched down and crawled to his trunk where he retrieved his rifle. ***Id***. at 620. Appellant stated he "took a couple of steps toward him and fired." ***Id***. at 622. Jeffrey Evans then emerged. A verbal and physical altercation ensued, and believing Jeffrey Evans was reaching for a gun, Appellant stated he fired his rifle in an effort to protect himself and Ms. Crawford. ***Id***. at 623-24. Before fleeing, Appellant inexplicably found himself taking a knife display case and Ronald Evans's handgun. ***Id***. at 624.

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Appellant stated that after the incident, he and Ms. Crawford returned to Ms. Linde's house where they consumed more alcohol and went to sleep. The next day, April 22, 2014, he and Ms. Crawford continued drinking vodka, and he was feeling "[s]till shook up. Sad." *Id*. at 625-27. On April 23, 2014, the day of their arrest at the "campsite," the pair continued drinking and each consumed a cheeseburger. Appellant indicated that at that time he felt "terrible." He also admitted that along with his statement to police, he wrote an apology wherein he expressed remorse for what had happened and indicated that he would "pray for everybody." *Id*. at 628-29.

On cross-examination, Appellant admitted that in the six to seven weeks prior to the murders, from March 1, 2014, to April 21, 2014, he repeatedly threatened to kill Ronald Evans. *Id*. at 634. He also acknowledged that the firearm shown to him in the courtroom was his and that he used it to kill the victims in self-defense. *Id*. at 635, 638, 645-49. Notwithstanding, Appellant admitted that while he watched a violent movie wherein people were getting shot, he decided, "somebody should shoot Barney." *Id*. at 641.

Appellant agreed his semi-automatic handgun required him to pull the trigger and shoot Ronald Evans five separate times. *Id*. at 650. He also stated that after he knocked Jeffrey Evans down with a punch to his face, he shot him four times in the back as he walked down the hall, because Appellant believed that when Mr. Evans put his arm up, he had a handgun. *Id*. at 652. In all, Appellant shot Jeffrey Evans five out of five times. *Id*. at

653. Appellant further admitted he never called the police after the incident. *Id*. at 656.

Following trial, Appellant was convicted of the aforementioned crimes. Although Appellant filed a motion for extension of time in which to file post-sentence motions and the trial court granted the same in its order of January 27, 2016, Appellant did not file a post-sentence motion.[5] Rather, Appellant filed a timely notice of appeal on February 8, 2016. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[6]

In his brief, Appellant presents two issues for our review, which we have reordered to coincide with the manner in which Appellant discusses these issues in the Argument portion of his appellate brief:

_____

[5] In its Order, the trial court directed that Appellant's post-sentence motions must be filed on or before February 17, 2016.

[6] In its Order filed on February 11, 2016, the trial court directed Appellant to file of record a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Upon consideration of Appellant's motion for an extension of time in which to file his concise statement, the trial court entered an order on March 3, 2016, directing that such statement shall be filed "**on** or before April 2, 2016" (emphasis added). However, Appellant filed his concise statement on April 4, 2016. Because April 2, 2016, fell on a Saturday, we deem this filing to be in compliance with the trial court's March 3, 2016, Order. *See* 1 Pa.C.S. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

> A. Whether the [t]rial [c]ourt abused its discretion in denying the motion seeking to suppress Appellant's April 23, 2014 statement to police.
>
> B. Whether the evidence at trial was insufficient as a matter of law to support the jury's verdict for First Degree Murder and Conspiracy to Commit First Degree Murder?

Brief for Appellant at 4.

When considering Appellant's challenge to the denial of his motion to suppress his statements to police, we are guided by the following, well-settled standard of review:

> In reviewing a suppression ruling, we are bound by the suppression court's factual findings, unless they are without support in the record. We may reverse the legal conclusions reached by the suppression court, however, if they are in error. Thus, our standard of review of the legal conclusions reached by the suppression court is *de novo.* Where, as here, the defendant is appealing the ruling of the suppression court, we consider only the evidence of the prosecution, and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the [suppression] record.

*Commonwealth v. Galvin*, 603 Pa. 625, 645-46, 985 A.2d 783, 795 (2009) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006) (citation omitted). This Court's scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 622 Pa. 126, 146, 79 A.3d 1073, 1085 (2013).

Although he admits that evidence of inebriation will not necessarily invalidate one's waiver of his *Miranda* rights or his incriminating statements, Appellant maintains that on the day of his arrest, he was severely "physically" and "psychologically" compromised as a result of his consumption of "dangerous amounts of vodka, on an empty stomach and with little to no sleep the previous night." Appellant avers that when he was spotted by a State Police helicopter in the woods, he was lying prostrate on the ground "exhausted and exposed to the elements" and that under "such dreadful and debilitating circumstances" he was incapable of comprehending the significance of his waiver of his *Miranda* rights. Brief for Appellant at 11. Appellant further asserts that Corporal King, the Commonwealth's sole witness at his suppression hearing, "conveyed an astonishing level of indifference concerning the potential negative impact of Appellant's excessive drinking on his physical and cognitive state." *Id*. at 12 citing N.T. Suppression, 2/26/15, at 24-27.

When considering Appellant's motion to suppress, the suppression court highlighted the following testimony presented at the suppression hearing:

> Corporal Christopher King initially indicated he has been employed by the Pennsylvania State Police for sixteen years. Corporal King stated, in the course of his career, he has observed people under the influence of alcohol and or controlled substances on numerous occasions.
> On April 23, 2014 Corporal King was at the Pennsylvania State Police barracks in Shickshinny and assigned to interview, along with Trooper Robert Franchella, [Appellant]. Corporal King

initially encountered [Appellant] between 4:00 and 5:00 p.m. [Appellant] was placed in a conference room containing a large table. [Appellant] was not restrained during the course of the interview.

Corporal King initially advised [Appellant] that the Pennsylvania State Police were conducting a death investigation regarding Ronald and Jeffrey Evans.

At 5:56 p.m. on April 23, 2014 Corporal King, utilizing "Pennsylvania State Police Rights Warning and Waiver Form", identified and introduced as Commonwealth's exhibit #1, advised [Appellant] of his Miranda warnings. [Appellant] thereafter signed the form acknowledging his constitutional warnings and agreed to speak with the investigators. Corporal King indicated the defendant had no questions regarding the rights and waiver form and at no time indicated a lack of understanding regarding his Miranda rights.

Corporal King described [Appellant's] demeanor as calm and cooperative. [Appellant] advised Corporal King that he had been drinking vodka on the day the statement was given. Corporal King asked [Appellant] if he had ingested any controlled substances and [Appellant] responded he had not.

Corporal King described [Appellant's] speech as normal and further that his eyes appeared slightly bloodshot, but the defendant did not appear ill. Corporal King further testified that Mr. Roche did not appear to be under the influence of alcohol or a controlled substance.

Corporal King further advised the court that during the course of the interview [Appellant] was provided bathroom breaks and had an opportunity to eat pizza and drink soda.

Corporal King reiterated that [Appellant] displayed no outward signs of intoxication.

The witness advised the court that the interview with [Appellant] lasted approximately two to two and a half hours, which includes the audio portion of the statement. Corporal King further stated [Appellant] was oriented to both time and date.

The Commonwealth next identified and introduced, Commonwealth's exhibit #2, a disc containing the audio portion of the aforementioned interview. The [c]ourt was also provided a transcript of the interview which consists of 64 pages.

The audio portion of the interview begins at 8:04 p.m. and concludes at 10:04 p.m. on April 23, 2014.[7]

At the inception of the audio interview. [Appellant] acknowledges both his consent to the recording and the reading of his <u>Miranda</u> warnings. The warnings are then reiterated by Corporal King with [Appellant] acknowledging an understanding of each separate representation.

The interview was conducted in conversational tone and [Appellant's] answers to questions posed are responsive and appropriate.

During the course of the interview [Appellant] acknowledges going to the residence with the express purpose of assaulting Ronald "Barney" Evans and, thereafter, as events unfolded he shot Ronald and Jeffrey Evans.

Subsequent to the conclusion of the audio statement Corporal King advised the [c]ourt that [Appellant] was transported for the purpose of preliminary arraignment before Magisterial District Judge Hasay.

During cross-examination Corporal King indicated his first contact with [Appellant] was at approximately 5:50 p.m.[] Corporal King indicated the only people in the interview room were himself, Trooper Franchella and [Appellant].

Corporal King acknowledged that [Appellant] had bloodshot eyes, however, he was not slurring his words nor did he appear to be under the influence of alcohol. When asked whether [Appellant] exhibited an odor of alcohol, the witness responded [Appellant] exhibited several odors, one of which was described as a minor odor of alcohol.

Upon further cross examination Corporal King stated that during the process of the interview he was being advised of information learned by other investigators.

Corporal King was never at the wooded area or campsite where [Appellant] and Holly Crawford were discovered.

Corporal King further stated that the non recorded portion of the interview began at approximately 5:55 p.m. and one and one half hours later the taped portion of the interview began.

Corporal King further indicated that during the break in the audio portion of the statement he advised [Appellant] he did not

---

[7] A copy of the audio interview was not made a part of the certified record for this Court's review.

- 11 -

believe [Appellant's] representations that Holly Crawford was not present at the scene of the shootings.

In response to further questions, Corporal King stated he did not lie to [Appellant] nor did he provide [Appellant] with "exaggerated facts ".

The witness reiterated that he had an opportunity to observe [Appellant] walking and described his gait as normal. Corporal King reiterated that [Appellant] did not appear drunk or under the influence of alcohol. Rather, Corporal King stated [Appellant] appeared normal.

[Appellant] assumed the stand and initially testified he remembers only "bits and pieces" of the day he was taken into custody. [Appellant] stated that on that day he purchased a half gallon of vodka at the liquor store at 11:00 a.m. He further indicated the day before he was taken into custody he consumed a fifth or more of vodka. [Appellant] testified he drank virtually every day.

[Appellant] stated he recalled speaking to the Pennsylvania State Police but that parts of the rights waiver discussion were "foggy ". [Appellant] testified he wished to speak to the police but "didn't put much thought into it ".

[Appellant] stated that prior to being taken into custody he was "drunk" and took a handful of Ms. Crawford's heart medication when he saw the state police helicopter overhead.

On cross-examination he testified he consumed a handful of the pills upon seeing the Pennsylvania State Police helicopter because he felt terrible and "wanted to die".

[Appellant] acknowledged taking a break during the course of the interview.

To the extent necessary for our present determination we resolve the issue of credibility in favor of Corporal King and against [Appellant].

Suppression Court Opinion, filed 3/20/15, at 12-17.

Upon our review of the arguments of the parties and the record, we conclude the suppression court properly denied Appellant's motion to suppress his statements to police. The record reveals Appellant knowingly, intelligently and voluntarily waived his ***Miranda*** rights as demonstrated through the written waiver he completed and through the testimony of

Corporal King regarding the circumstances in which Appellant had completed that waiver and made his statement. A sixteen-year veteran police officer, Corporal King had dealt with hundreds of individuals who were under the influence of alcohol and/or controlled substances and opined Appellant was not drunk or under the influence of alcohol when he waived his **Miranda** rights and made his statement. N.T. Suppression, 2/26/15, at 6-7. Indeed, Appellant admitted at the suppression hearing that his voice on the hour-long audiotape that had been played for the suppression court was clear and that he responded cogently to questions posed by the officers. N.T. Suppression, 2/26/15 at 39-41. Appellant also admitted to leaving the interview room once to use the restroom and indicated that he was able to do so unassisted. **Id**. at 42. Accordingly, Appellant's first challenge must fail.

Appellant next challenges the sufficiency of the evidence to sustain his convictions of First-Degree Murder and Criminal Conspiracy. In reviewing such claims, we employ a well-settled standard of review:

> [W]e examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. **Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015).

**Commonwealth v. Lloyd,** 2016 WL 6962127, at *1 (Pa.Super. Nov. 29, 2016).

- 13 -

To sustain a conviction for murder of the first degree, the Commonwealth must prove that: "(1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and specific intent to kill." **Commonwealth v. Hitcho**, ___ Pa. ____, 123 A.3d 731, 746 (2015); 18 Pa.C.S.A. § 2502(a). "Section 2502 of the Crimes Code defines murder of the first degree as an 'intentional killing.'" **Commonwealth v. Diamond**, 623 Pa. 475, 487, 83 A.3d 119, 126 (2013) citing 18 Pa.C.S.A. § 2502(a), (d). "[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact the design to kill can be formulated in a fraction of a second/ Premeditation and deliberation exist whenever the assailant possessed the conscious purpose to bring about death." **Hitcho**, **supra** ___ Pa. at ____, 123 A.3d at 746.

In addition, to sustain a conviction for criminal conspiracy, the Commonwealth must prove beyond a reasonable doubt that a defendant: "(1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." **Commonwealth v. McCall**, 911 A.2d 992, 996 (Pa.Super. 2006) (citation and quotation omitted); 18 Pa.C.S.A. § 903.

As a prefatory matter, we note that in the Summary of the Argument portion of his appellate brief, Appellant avers his convictions "were not supported by and/or w[ere] against the weight of the evidence produced at trial." Appellant's Brief at 8. To the extent Appellant conflates principles of weight and sufficiency of the evidence by purporting to raise a challenge to the weight of the evidence to sustain his convictions along with his sufficiency challenge, Rule 607 of the Pennsylvania Rules of Criminal Procedure requires an appellant to preserve this issue in a timely motion either prior to or post-sentence. Pa.R.Crim.P. 607(A). Appellant has failed to preserve his weight of the evidence argument in accordance with Rule 607. Therefore, he has waived a weight of the evidence claim for our review.

When considering Appellant's challenge to the sufficiency of the evidence to sustain his convictions, the trial court found Appellant had waived this issue for his failure to properly assert it in his concise statement of matters complained of on appeal. The trial court indicated Appellant's allegations of error are "quintessentially vague and woefully inadequate" in that they are comprised of "merely boiler plate [sic] statements precluding any meaningful review and resulting in waiver." The trial court stated that due to this deficiency, its effort to conduct appropriate appellate review had been impeded for Appellant's failure to identify any element of any crime with regard to which the evidence allegedly had been insufficient. Trial

Court Opinion, filed 4/27/16, at 4-5. Specifically, the trial court indicated that:

> counsel has not only failed to identify any element or elements of any crime or crimes, there is not the slightest suggestion as to how or in what manner the evidence adduced from 13 Commonwealth witnesses, including 7 experts, whose testimony consumes several days of trial, renders the evidence in the instant matter insufficient.

*Id*. at 6.

The trial court relied upon this Court's recent decision in **Commonwealth v. Tyack**, 128 A.3d 254, 261 (Pa.Super. 2015) wherein a panel of this Court found waiver of a sufficiency of the evidence claim to be appropriate despite the lack of objection by the Commonwealth and despite the presence of a trial court opinion where the appellant simply declared in boilerplate fashion the evidence had been insufficient to support his conviction in his Rule 1925(b) statement. Notwithstanding, the trial court proceeded to a consideration of the merits of Appellant's sufficiency claim and determined that the Commonwealth had presented sufficient evidence to establish each element of First-Degree Murder and Criminal Conspiracy. Trial Court Opinion, filed 4/27/16, at 9-13. Upon our review, we agree with the trial court's determination Appellant has waived this issue.

Appellant raised the following questions in his Rule 1925(b) statement:

3. Whether the evidence was insufficient as a matter of law to support [Appellant's] convictions of first-degree murder in the deaths of Ronald Evans and Jeffrey Evans.

4. Whether the evidence at trial was insufficient as a matter of law to support [Appellant's] convictions for Criminal Conspiracy to Commit Criminal Homicide in the deaths of Jeffrey and Ronald Evans.

Statement of Matters Complained of on Appeal, filed 4/4/16, at ¶¶ 3-4. Similarly, in **Commonwealth v. Williams,** 959 A.2d 1252 (Pa.Super. 2008), the appellant set forth the following issue in his Rule 1925(b) statement and brief: "There was insufficient evidence to sustain the charges of Murder, Robbery, VUFA no license, and VUFA on the streets. Thus [appellant] was denied due process of law." **Id.** at 1256. A panel of this Court found the issue waived and in doing so stressed that where an appellant wishes to preserve a claim that the evidence was insufficient, his Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient so this Court can then analyze the element or elements on appeal. We held the aforementioned Rule 1925(b) statement's failure to specify the allegedly unproven elements of the crimes resulted in the waiver of the sufficiency issue. **Id**. at 1257.

We further noted that waiver applied despite the fact that the Commonwealth had failed to object to the defective Pa.R.A.P. 1925(b) statement and the trial court addressed the issue in its Rule 1925(a) opinion. We found this to be "of no moment to our analysis because we apply Pa.R.A.P.1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. Thus, we find 1925(b) waiver where

appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion." **Id.** at 1257 (some citations omitted). **See also Tyack**, **supra**.

Clearly, Appellant herein did not specify the element or elements of First-Degree Murder and Criminal Conspiracy with regard to which he deems the evidence was insufficient to sustain a conviction. **See Williams,** 959 A.2d at 1257. The fact that the Commonwealth did not object to the defect and the trial court addressed the sufficiency of the evidence issue in the alternative is of no moment. **See id.** Therefore, we find the issue waived. **See id.**

Even assuming *arguendo* that this issue has not been waived based upon the deficient Rule 1925(b) statement, we would find it waived for Appellant's failure to develop the claim in his appellate brief. The failure to properly develop a claim renders an issue waived. **See Williams**, **supra**, 959 A.2d at 1258; **Commonwealth v. Ellis,** 700 A.2d 948, 957 (Pa.Super. 1997) (holding waiver results if an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief).

Appellant devotes just three paragraphs of argument to his assertion the evidence was insufficient to sustain his First Degree Murder convictions wherein he baldly avers his testimony and "other evidence" shows he never planned to kill either of the victims and, therefore, could not have agreed to

do so with anyone else. Appellant further states that due to his excessive alcohol consumption he "reasonably believed he was in danger of being killed and acted accordingly." Appellant's Brief at 13-14. The three paragraphs Appellant devotes to his argument in support of his statement that "the evidence is also lacking that there was agreement between [him] and Holly Crawford to kill the Decedents" are otherwise comprised of general legal principles pertaining to Criminal Conspiracy. *Id*. at 14-15.

In light of the foregoing, Appellant's sufficiency of the evidence claim is waived.[8]

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2017

---

[8] Even had Appellant properly preserved this issue, our examination of the evidence, including reasonable inferences drawn therefrom and Appellant's own admissions at trial, confirms the trial court's alternative observation that the evidence was sufficient to support each conviction.