J-S05010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES BEAHAN | : | |
| | : | |
| Appellant | : | No. 748 MDA 2021 |

Appeal from the Order Entered May 5, 2021
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  20-40835,
CP-35-MD-0000136-2021

BEFORE:  PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED APRIL 20, 2022**

James Beahan appeals from his judgment of sentence for indirect criminal contempt for violating a protection from abuse ("PFA") order. We issued a rule to show cause why Beahan's appeal should not be quashed pursuant to ***Commonwealth v. Walker,*** 185 A.3d 969 (Pa. 2018) (adopting a bright-line rule that separate notices of appeal must be filed when a single order resolves issues arising on more than one lower court docket), *overruled in part by* ***Commonwealth v. Young***, 265 A.3d 465 (Pa. December 21, 2021). While we find no need to quash the appeal pursuant to ***Walker***, we conclude Beahan has waived the issues he attempts to raise on appeal. We therefore affirm.

The trial court issued a final PFA order against Beahan on December 7, 2020. The PFA order generally prohibited Beahan from having contact with his

estranged wife, Danielle Beahan. It specifically prohibited him from, among other things, stalking, harassing, or threatening Danielle or his two minor children with Danielle, J.B. and P.B. The PFA order did allow Beahan to have contact and supervised visits with J.B. and P.B, as well as to text or email Danielle about matters related to the visitation. Beahan did not appeal the PFA order, which was set to expire on December 7, 2023.

In April of 2021, Beahan was arrested and charged with indirect criminal contempt for violating the PFA order. The trial court held a hearing on the contempt charge on May 5, 2021, during which both Danielle and Beahan testified. Danielle testified that on April 13, 2021, she and her oldest daughter were on their way to pick up J.B. and P.B. from daycare when Danielle got a text from Beahan saying he had already picked the children up. *See* N.T., 5/5/21, at 14. Danielle testified that it was not Beahan's period of custody,[1] and nothing in the PFA order allowed Beahan to pick the kids up from daycare during her period of custody without her permission. *See id.* at 14, 16.

Danielle testified that she and her daughter then drove to Beahan's house. When they arrived, Danielle recounted that P.B. came out and got into her car. *See id.* at 17. Beahan, who was standing on his porch, told Danielle he would be taking J.B. to baseball practice that evening, to which Danielle replied that it was her day and she would take J.B. to practice if he had it.

---

[1] Apparently, the restrictions requiring Beahan's visits to be supervised were later lifted. *See* N.T., 5/5/21, at 9-10.

*See id*. She instructed Beahan to send J.B. out of the house. *See id*. Danielle stated that she and Beahan began to argue about J.B. attending baseball practice for a baseball team on which J.B. no longer played. *See id.* at 18. At that point, Danielle testified, J.B. came out of the house and stood on the porch looking "scared." *Id.* at 18. J.B. walked down the porch steps and got into his mother's car and shut the door. *See id*.

According to Danielle, Beahan then jumped over the porch railing, went to the car, and tried to open the car door. *See id.* at 18-19. J.B. began to cry. *See id.* at 19. Danielle recounted that when Beahan couldn't open the locked car door, he began to take a video with his phone, while repeatedly asking, "What did mommy do to you? Why are you crying?" *Id.* at 19. Danielle's oldest daughter called the police.[2]

Beahan testified he had previously picked the children up after school before doing so on April 13, 2021. *See id*. at 60-61. On that day, he testified he texted Danielle to tell her he was at the daycare to pick the kids up and Danielle told him that was fine. *See id.* at 45. When Danielle came to his house to pick the children up, Beahan asserted that while he did leave the porch, he did not think he jumped over the porch railing. *See id.* at 52. He also stated he did not try to open the car door, *see id.* at 79, that J.B. was

---

[2] Danielle's oldest daughter also testified at the hearing, essentially corroborating Danielle's testimony about what occurred at Beahan's house on April 13, 2021.

emotional but not crying, ***see id.*** at 77, and he only videotaped the incident so Danielle didn't "change the story," ***id.*** at 76.

In an order dated May 5, 2021, and entered May 6, 2021, the trial court found Beahan guilty of indirect criminal contempt for violating the PFA order and sentenced him to six months of probation. Beahan did not file a post-sentence motion.

Beahan did file a notice of appeal to this Court. In his notice of appeal, Beahan listed both the PFA order's civil docket number and the indirect criminal contempt order's criminal docket number in the caption. The notice of appeal, however, specifically stated that Beahan was appealing the trial court's order, dated May 5, 2021, finding him guilty of indirect criminal contempt. Because Beahan had listed two docket numbers in a single notice of appeal, this Court issued a rule to show cause why this Court should not quash the appeal pursuant to ***Walker***.

Counsel for Beahan filed a response to the rule to show cause. In that response, counsel stated that although he had inadvertently listed the two lower court docket numbers on the single notice of appeal, he was aware that the deadline to appeal the PFA order had long passed and his intent was only to appeal the May 5, 2021 order finding Beahan guilty of indirect criminal

contempt.[3] We agree with counsel that, under these circumstances, we do not need to quash his appeal. *See Commonwealth v. Rebecca Johnson,* 236 A.3d 63 (Pa. Super. 2020) (*en banc*) (holding that an appellant complies with *Walker* when she files a separate notice of appeal for each lower court docket number she wishes to appeal, even if each one of the separate notice of appeals contains multiple docket numbers).[4]

After Beahan filed his notice of appeal, the trial court ordered him to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. Beahan complied and raised the following issues in his statement:

a. The trial court erred in finding the appellant guilty of indirect criminal contempt;

b. The trial court erred in finding that the alleged contact violated the terms of the PFA;

---

[3] Curiously, Beahan's response seems to confuse the docket number that is associated with his appeal from the order dated May 5, 2021. He claimed his only intent was to appeal that order, and yet, he followed that assertion with a contention that he was therefore only filing an appeal from the PFA civil docket number. This assertion aside, it is clear that the appeal deadline period for the PFA order has passed and that Beahan's intent is to appeal the order dated May 5, 2021, which found him guilty of indirect criminal contempt under the criminal docket number.

[4] We recognize that our Supreme Court recently overruled *Walker* in part in *Young*. *Young* held that "[Pa.R.A.P.] 341 requires that when a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket; but, where a timely appeal is erroneously filed at only one docket, [Pa.R.A.P.] 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate." 265 A.3d at 477. We do not need to take this step here, given that, as explained above, the notice of appeal currently of record allows for the appeal of the order dated May 5, 2021.

    c. The trial court erred in giving too much weight to the Appellee's witnesses[;]

    d. The trial court erred in failing to give proper weight to the appellant's testimony.

Statement of Errors Complained of on a PFA Violation Conviction, 6/29/21, (single page).

Beahan raises the same issues in his appellate brief. His arguments in support of those issues are difficult to follow, primarily because Beahan improperly intertwines claims that the evidence was insufficient to support the indirect criminal contempt verdict with claims that such a verdict was against the weight of the evidence. This is highlighted by his summary of the argument, which reads in its entirety:

> The weight of the evidence does not support a finding of indirect criminal contempt. In order to be found guilty of indirect criminal contempt the following four elements must be supported by the weight of the evidence: (1) the court's temporary [PFA] order and its subsequent agreed upon order dated December 2020 must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

Appellant's Brief at 8.

The Commonwealth also recognizes that Beahan's issues improperly conflate challenges to the sufficiency of the evidence with challenges to the weight of the evidence. **See** Commonwealth's Brief at 9, 15. In doing so, the Commonwealth reinforces that sufficiency claims are necessarily distinct from weight claims: sufficiency claims challenge whether the Commonwealth

established all of the elements of an offense beyond a reasonable doubt, whereas weight claims concede the evidence is sufficient but aver the evidence was so weighted in favor of acquittal that a new trial is warranted. *See* Commonwealth's Brief at 9.

The Commonwealth asserts that to the extent Beahan is raising a weight claim, it is waived. In support, the Commonwealth points out that Beahan never raised a weight claim with the trial court in a motion for a new trial, as he was required to do to preserve such a claim for appeal. *See* Pa.R.Crim.P. 607(A) (stating that a claim that the verdict is against the weight of the evidence must be raised with the trial court in a motion for a new trial orally or by written motion before sentencing, or in a post-sentence motion). We agree. Beahan does not point to any place in the record where he preserved a weight claim, and our own review of the record does not reveal one. Accordingly, any attempt Beahan has made to raise a weight claim offers him no basis for relief as any such claim has been waived.

The Commonwealth also argues that, to the extent Beahan is raising a sufficiency claim, it is also waived as he did not clearly identify in his 1925(b) statement what elements of indirect criminal contempt he believes the Commonwealth failed to prove beyond a reasonable doubt. Again, we agree. *See Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017) (stating that in order to preserve a sufficiency claim on appeal, an appellant

must specify in the 1925(b) statement the element or elements upon which the evidence was insufficient).

As the Commonwealth observes, Beahan's arguments on appeal exemplify why it is imperative for an appellant to present with sufficient specificity in his 1925(b) statement what elements he believes were not sufficiently proven at trial so as to allow the trial court the ability to address those arguments in its 1925(a) opinion. In his brief, Beahan asserts there was insufficient evidence to sustain his conviction for indirect criminal contempt because the PFA order was not clear. Specifically, he contends the PFA was contradictory in its terms and was not clear because the trial court did not use standardized forms for his PFA order. The trial court, however, did not address either of these contentions in its 1925(a) opinion because the 1925(b) statement did not specify, directly or inferentially, either of these arguments.

Beahan also asserts that "the third and fourth elements [to make out a case for indirect criminal contempt], that the act consitut[ing] the violation must have been volitional and willful intent, is clearly not supported by the weight of the evidence." Appellant's Brief at 14. Again, to the extent Beahan is raising this as a weight claim, it is waived for failure to timely present such a claim to the trial court. It is also waived to the extent Beahan is arguing the evidence was insufficient to support his indirect criminal contempt conviction because there was insufficient evidence to support a finding that Beahan committed a volitional act. He did not specifically challenge this element in his

1925(b) statement as one that the Commonwealth failed to sufficiently prove at the hearing, and the trial court therefore did not address it. The claim is waived for that reason as well. **See Roche**, 153 A.3d at 1072.

Beahan also argues the trial court erroneously found that he "harassed" or "stalked" Danielle. In support, Beahan recites the elements for the offenses of stalking and harassment, and asserts the evidence was insufficient to support those elements. Of course, as the Commonwealth observes, Beahan was not convicted of either stalking or harassment, but rather, was convicted of indirect criminal contempt for violating the PFA order prohibiting him from stalking or harassing Danielle. His argument simply misses the mark. Even so, any argument that the evidence was insufficient to support the trial court's finding that he harassed Danielle is waived, as his 1925(b) statement does not raise that issue with sufficient specificity.

Beahan's last two issues, as framed in his statement of questions involved, challenge the weight the trial court accorded to the witnesses' testimony. Beahan's argument section in support of those issues, however, only cites cases addressing the sufficiency of the evidence. As such, he has violated Pa.R.A.P. 2116 (providing that no question will be considered unless it is stated in the statement of questions involved), and his issues are waived for that reason. Any claim Beahan is attempting to make that the verdict was against the weight of the witnesses' testimony has also been waived pursuant to Pa.R.Crim.P. 607(A). Despite his waiver of these issues, we add only that

the trial court, sitting as fact-finder, was free to believe all, part or none of the witnesses' testimony. **See Commonwealth v. Ramtahal,** 33 A.3d 602, 607 (Pa. 2011).

While we find that Beahan has waived all of his issues, we note that, although the trial court only had an overly-broad and vague 1925(b) statement from which to write its 1925(a) opinion, it did generally explain its reasons for finding the evidence sufficient to support an indirect criminal contempt conviction. To that end, the court first noted that in order for the Commonwealth to sustain a conviction for indirect criminal contempt for violating a PFA order, it must prove: (1) the PFA order was definite, clear and specific so as to leave no uncertainty of what conduct is prohibited; (2) the contemnor had notice of the PFA order; (3) the act constituting the violation of the PFA order was volitional; and (4) the contemnor acted with willful intent. **See** Trial Court Opinion, 7/30/21, at 2 (unpaginated) (*citing **Commonwealth v. Haigh***, 874 A.2d 1174, 1177 (Pa. Super. 2005))

In finding the Commonwealth had proven these elements here, the trial court initially observed the PFA order clearly prohibited Beahan from harassing, stalking or attempting to threaten Danielle, and that Beahan conceded he had notice of the PFA order. Despite Beahan's notice of the PFA order and what it prohibited, the court stated that:

> when [Danielle] arrived at [Beahan's] home to retrieve the children during her period of custody, [Beahan] first withheld the minor child, J.B., and when he eventually released the minor child, J.B., to [Danielle], [Beahan] jumped over the banister of the

home, began to film [Danielle], and persisted he would take the minor child, J.B., to baseball practice.

Trial Court Opinion, 7/30/21, at 3 (unpaginated). The trial court then found that this course of conduct, "failing to release [J.B.] to [Danielle] when she stated she would take [J.B.] to baseball practice[,]... jump[ing] over the banister at [Danielle], videotap[ing Danielle] and continu[ing] harassing behavior after [Danielle] instructed [Beahan] she would take [J.B.] to baseball practice" showed Beahan had violated the terms of the PFA by intentionally harassing Danielle. *Id.* at 6 (unpaginated).

We see no abuse of discretion in the trial court's determination that the Commonwealth presented sufficient evidence for the court to find Beahan guilty of contempt. *See Haigh*, 874 A.2d at 1176-77 (stating this Court will only reverse a trial court's contempt conviction when there has been a plain abuse of discretion). Accordingly, even if we were to overlook Beahan's waiver of his claim that the evidence was insufficient to support his conviction for indirect criminal contempt, we would find that the trial court did not err in reaching the contrary conclusion. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2022