J-S05002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENI MATEO | : | |
| | : | |
| Appellant | : | No. 2769 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 25, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000792-2022

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 6, 2025**

Deni Mateo appeals from the aggregate judgment of sentence of seventy-eight to one hundred and fifty-six months of incarceration imposed following his convictions for possession with intent to deliver ("PWID"), conspiracy to do the same, and possession of a controlled substance.  We affirm.

By way of background, on December 3, 2021, Appellant agreed to give his associate, Regino Reyes, a ride to meet what turned out to be an undercover agent, later identified as Corporal Javier Garcia, to orchestrate a sale of a large quantity of fentanyl.  The three men met at a Denny's restaurant in Philadelphia to solidify the deal.  Corporal Michael Trupp and

_____

[*] Former Justice specially assigned to the Superior Court.

other officers were conducting surveillance in a nearby parking lot and were on standby to execute arrests on Corporal Garcia's signal.

Although all prior negotiations had been between Reyes and Corporal Garcia, the undercover officer primarily interacted with Appellant in the restaurant and recorded the conversation. Corporal Garcia informed the men that he had cash for six kilograms of fentanyl at $35,000 per kilogram. Reyes stated that they could only complete a transaction for two kilograms, but Appellant claimed that he could obtain four more kilograms from New York the following day. They agreed on two kilograms for the time being. The associates, however, wanted to ensure that Corporal Garcia had the funds, so they traveled to his hotel in the undercover officer's car.

Upon arrival in the hotel parking lot, Corporal Garcia refused to take Appellant and Reyes to his room without proof of the drugs. As a tan SUV appeared on scene, Reyes announced that the "material" had arrived and a woman, later identified as Eskalyn Canela, stepped out with a bag. *See* N.T. Jury Trial, 5/3/23, at 190. Appellant also stated to Corporal Garcia that he and Reyes "don't work alone." *Id*. The corporal continued to maintain that he did not feel comfortable with multiple people in his hotel room, so Appellant and Reyes decided that Canela would instead accompany Corporal Garcia to count his money.

Once inside the lobby, the officer asked Canela to see the contents of her bag. When he saw what appeared to be two compressed powder bricks

of fentanyl, he signaled to Corporal Trupp and all parties were arrested, including the undercover agent to maintain his security. The two bricks were later confirmed to be floral fentanyl, a controlled substance. *Id*. at 65-71.

The Commonwealth charged Appellant with the aforementioned offenses. Appellant proceeded to a joint jury trial with co-defendant Canela after the court denied his motion to sever, which he unsuccessfully renewed before testimony began.[1] The Commonwealth presented Corporal Trupp and Corporal Garcia, who detailed the above facts. Additionally, it played the audio and video recordings taken on Corporal Garcia's cellphone.[2]

The Commonwealth also presented Trooper Sergio Colon, an expert in manufacturing, packaging, and delivery of controlled substances, to inform the jury on drug trafficking, the roles of individuals in a trafficking enterprise, and the packaging of narcotics. Appellant's counsel raised multiple objections throughout the expert's testimony arguing that he was testifying as to the element of possession, whereas his area of expertise lay in manufacturing, packaging, and distribution. *See* N.T. Jury Trial, 5/4/23, at 135-36, 138-39,

_____

[1] Reyes entered into a negotiated guilty plea prior to trial.

[2] Although these exhibits were shown to the jury and admitted into evidence, they were not included in the certified record. Nevertheless, to the extent that the parties reference them, we may review the transcript of the audio recording in the reproduced record since the parties do not contest its accuracy. *See* Pa.R.A.P. 1921, *Note* ("[W]here the accuracy of a pertinent document is undisputed, the Court [may] consider that document if it was in the [r]eproduced [r]ecord, even though it was not in the record that had been transmitted to the Court.").

141-51. The court overruled these objections, and the Commonwealth ultimately asked Trooper Colon "based on the facts of this case specifically, do you have an opinion as to [Appellant]'s involvement?" *Id*. at 151. The expert responded, "I believe that [Appellant] was responsible for orchestrating the procurement and receipt of the narcotics which was agreed upon." *Id*. at 151. Appellant's counsel objected once more, stating that the words "procurement and receipt" implied possession, and requested a mistrial or a curative jury instruction. *Id*. at 151-57. The court denied the motion and instead instructed the jury that the expert's opinion "is not to be regarded by you as evidence of any possessory offense." *Id*. at 157.

Appellant testified in his defense, generally denying his involvement in the transaction and his knowledge therewith. *See* N.T. Jury Trial, 5/5/23, at 11, 15. Although Appellant did not call Reyes, Canela did, and he stated that neither Appellant nor Canela had anything to do with the deal. *See* N.T. Jury Trial, 5/4/23, at 245-46.

The jury convicted Appellant of all charged offenses, and the trial court sentenced him to the aforementioned term of imprisonment. This timely appeal followed. Both Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925. Appellant raises the following issues for our determination, which we have reordered:

> I. Did the trial court abuse its discretion by denying Appellant's motion for judgement [*sic*] of acquittal, following the Commonwealth's case-in-chief?

II. Did the trial court err by denying Appellant's motions to sever his trial from his co-defendant's trial?

III. Did the trial court err by permitting Trooper Sergio Colon, an expert in the field of manufacturing, packaging[,] and delivery of controlled substances, to offer opinion testimony concerning Appellant's intent, stating that Appellant was "responsible for orchestrating the procurement and receipt of the narcotics which was agreed upon...", without providing a basis for the opinion?

IV. Did the trial court abuse its discretion by permitting the attorney for the Commonwealth, during his closing remarks, to make purely speculative and overly prejudicial statement [*sic*] that Appellant worked for a "rich person in New York," an argument not based on any facts in the trial; make overly prejudicial commentary on Appellant's consciousness of guilt inferred from his testimony, misstate trial testimony, and make comments concerning his own ethics?

Appellant's brief at 3-4 (capitalization altered).

We begin with the principles governing Appellant's first challenge, which hinges on the sufficiency of the evidence to sustain his convictions for PWID and conspiracy to do the same.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gaspard*, 323 A.3d 1276, 1278-79 (Pa.Super. 2024) (cleaned up).

To sustain a conviction for conspiracy, the Commonwealth must prove that a defendant: "(1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Roche*, 153 A.3d 1063, 1071 (Pa.Super. 2017). The overt act can be committed by any co-conspirator. *Id*.

The offense of PWID is defined as follows:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). Hence, a PWID conviction requires proof of "both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Bernard*, 218 A.3d 935, 943 (Pa.Super. 2019) (cleaned up).

Where the defendant was not found in physical possession of the contraband, he may nonetheless be liable for PWID through conspiracy liability. *See Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa.Super. 2021) (*en banc*) ("[S]uccessful proof of a conspiracy makes each co-

conspirator fully liable for all of the drugs recovered, without the necessity of proving [actual or] constructive possession." (cleaned up)). In examining whether the Commonwealth established the element of intent to deliver, "we must examine the facts and circumstances surrounding the possession." *Bernard*, 218 A.3d at 943.

Appellant contends that the Commonwealth did not meet its burden where "at best, [it] proved that Appellant was involved in a conversation with Reyes and [Corporal] Garcia." *See* Appellant's brief at 22. He claims that the corporal's testimony was vague, as he referred to both Appellant and Reyes together when recounting their conversations and interactions, and did not distinguish between the two men. *Id*. at 22-23. Moreover, he argues that the Commonwealth presented no evidence that Appellant "ever had the two kilo[gram]s of fentanyl on his person" or that he exercised "dominion or control" over the drugs. *Id*. at 23.

We disagree. The testimony of Corporal Garcia, which was corroborated by Corporal Trupp, was sufficient to convict Appellant of PWID and conspiracy. Corporal Garcia explained that he met with Appellant and Reyes to discuss obtaining a large quantity of fentanyl at a Denny's, and Appellant took charge of the conversation once inside the restaurant. *See* N.T. Jury Trial, 5/3/23, at 180-85, 194-95. Further, the corporal attested that Appellant claimed he could obtain an extra four kilograms from New York if the officer wanted more than the currently-available two kilograms. *Id*. at 186, 222. Corporal Garcia

recounted that, once the parties arrived at the hotel, Appellant told him that he and Reyes do not work alone as Canela arrived on scene carrying two wrapped, one-kilogram bricks of fentanyl in a bag. *Id*. at 190. He lastly explained that Appellant and Reyes directed Canela to count his money to finalize the deal. *Id*. at 191-92. Although Appellant did not touch the drugs, the evidence was nevertheless sufficient to prove that he actively participated in the operation to possess and deliver a large quantity of fentanyl to Corporal Garcia. *See Bowens*, 265 A.3d at 743 (holding that the appellant was "just as culpable for [his co-conspirator's] possession of the drugs . . . as [the co-conspirator] himself"). Accordingly, the evidence was sufficient to support Appellant's convictions for PWID and conspiracy.

We move to Appellant's final three issues, all of which we review for an abuse of the trial court's discretion. *See Commonwealth v. Kurtz*, 294 A.3d 509, 531 (Pa.Super. 2023) (holding that a trial court's denial of a motion to sever is reviewed for an abuse of discretion); *Commonwealth v. May*, 271 A.3d 475, 479 (Pa.Super. 2022) ("We review a trial court's decision to admit or exclude expert opinion testimony under an abuse of discretion standard."); *Commonwealth v. Jones*, 191 A.3d 830, 835 (Pa.Super. 2018) ("[I]n reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion." (cleaned up)). This Court only concludes that a trial court has abused its discretion where "it misapplies the law, or its exercise of judgment is manifestly unreasonable[,] or the result of

partiality, prejudice, bias[,] or ill-will." ***Commonwealth v. Nabried***, 327 A.3d 315, 321 (Pa.Super. 2024).

Appellant first challenges the trial court's decision to try his and Canela's cases together. In this vein, Rule 582 of the Rules of Criminal Procedure provides, in pertinent part:

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
>> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>>
>> (b) the offenses charged are based on the same act or transaction.
>
> (2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 582. Rule 583, on the other hand, states that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Additionally, this Court has noted that "there is a universal preference for a joint trial of co-conspirators." ***Commonwealth v. Cole***, 167 A.3d 49, 57 (Pa.Super. 2017).

Appellant argues that his co-defendant, Canela, sought to introduce prejudicial evidence against him. ***See*** Appellant's brief at 25. Specifically, he contends that Reyes testified to exculpate Canela, and that he "could not

question Reyes as to Appellant's culpability while Reyes [wa]s testifying, which could confuse the jury" and "have the prejudicial effect of inferring Appellant's guilt." *Id*. at 25-26. Although "Reyes ultimately testified that Appellant was not aware of, or part of [the] transaction," Appellant nevertheless contends that he was prejudiced because he was not able to question Reyes. *Id*. at 26 (some articles omitted).

In its 1925(a) opinion, the trial court defended its decision not to sever the trials. It stated that the charges against Appellant and Canela "arose from the same course of events, evidence, and testimony." Trial Court Opinion, 4/17/24, at 20. It also determined that the joint trials "served the interests of justice by enabling more accurate assessment[s] of relative culpability." *Id*. The court further noted that Reyes's testimony actually aided Appellant's defense, as he attested that both Canela and Appellant "did not have anything to do with the intention to sell drugs and conspiracy." *Id*. at 21.

We discern no abuse of discretion. Both Appellant and Canela participated in the same conspiracy with Reyes to deliver two kilograms of fentanyl to Corporal Garcia, and thus the "offenses charged [were] based on the same act or transaction." Pa.R.Crim.P. 582(1)(b); *see also Cole*, 167 A.3d at 57. Additionally, Appellant chose not to cross-examine Reyes at trial, and only asserts, without further explanation, that questioning him would have confused the jury and led them to infer Appellant's guilt. Nevertheless, it is plain that Appellant suffered no prejudice from Reyes's testimony since

he favorably declared that Appellant did not have any knowledge of the transaction. *See* N.T. Jury Trial, 5/4/23, at 246-47. As Appellant avers no other possibility of prejudice or confusion, and we see none, this argument affords no relief.

Appellant next contests the trial court's decision to allow opinion testimony from expert witness Trooper Colon. Rule 702 governs testimony by expert witnesses and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Rule 703 also provides, in relevant part: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. Further, Rules 704 and 705 state, respectively, that "[a]n opinion is not objectionable just because it embraces an ultimate issue," and "[t]he expert must state the facts or data on which the opinion is based." Pa.R.E. 704, 705. The weight to be afforded to an

expert's testimony "is for the factfinder." ***Commonwealth v. Jones***, 240 A.3d 881, 890 (Pa. 2020).

Appellant contests Trooper Colon's statement that he believed that Appellant orchestrated the transaction for two kilograms of fentanyl. ***See*** N.T. Jury Trial, 5/4/23, at 151; Appellant's brief at 19. He contends that Trooper Colon's testimony was unduly prejudicial in that "it prompted the [j]ury to accept Trooper Colon's opinion regarding [an] ultimate [issue] of fact" concerning Appellant's possession of the fentanyl "rather than assessing the fact witness testimony and evidence." Appellant's brief at 20.[3]

The court concluded that "based upon Trooper Colon's training and experience, and the facts of the case, he was permitted to offer expert opinion testimony as to [the] extent of [Appellant]'s involvement in the distribution of fentanyl." Trial Court Opinion, 4/17/24, at 23. Moreover, it highlighted that the expert formed this opinion based on his review of the case, and that the court issued a limiting instruction to the jury that it may not consider the expert's testimony as to possession. ***Id***. at 23-24.

---

[3] To the extent Appellant argues that the expert's testimony was improper for other reasons, these assertions have been waived, as Appellant's objections only challenged the expert opining as to the element of possession. ***See Commonwealth v. Spone***, 305 A.3d 602, 608 (Pa.Super. 2023) (stating that Pa.R.A.P. 302(a) requires "that trial judges must be given an opportunity to correct errors at the time they are made. . . . [Thus,] a party must make a timely and specific objection at trial in order to preserve an issue for appellate review."); N.T. Jury Trial, 5/4/23, at 135-36, 138-39, 141-51.

The trial court's analysis is apt. Trooper Colon's testimony was not objectionable solely because it embraced a pertinent issue. *See* Pa.R.E. 704. The court also issued Appellant's requested limiting instruction after the expert gave his opinion as to Appellant's involvement, directing the jury not to consider the expert's opinion as to possession, and Appellant did not object. *See* N.T. Jury Trial, 5/4/23, at 157; *Commonwealth v. Cole*, 167 A.3d 49, 77 (Pa.Super. 2017) (noting that "the jury is presumed to have followed the court's instructions[,]" and that an appellant's "failure to object to the instruction indicated his satisfaction with the instruction"). Thus, this argument lacks merit.

Appellant's final matter takes issue with some of the Commonwealth's statements during closing arguments. The following legal precepts guide our analysis of this question:

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence

- 13 -

or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Commonwealth v. Jones*, 191 A.3d 830, 835-36 (Pa.Super. 2018) (cleaned up).

Appellant maintains that the ensuing statements inflamed the emotions of the jury, referenced matters that were not in evidence, and were not properly in response to trial counsel's arguments:

Ladies and gentlemen, no one's family is on trial here. We all feel bad. I mean that's terrible. But isn't it a little bit slight [*sic*] of hand when someone's on trial and I'm asking questions about the facts in this case and someone starts telling me repeatedly about some suffering in the family? Again, I feel bad -- I respect the family is here. I appreciate both families for being here. It's important. It's great that they have good family support. But the answers that you are hearing, the lack of response to any -- we couldn't even agree probably that the sky was blue. That's not someone who's confused. That's someone who -- you saw he was asking you to look at me, look at me because he was begging for mercy. That's the conscience of a guilty man.

. . . .

How can I stand in front of you as a person who tries to be ethical and tell you right now that guy is so guilty.

. . . .

. . . [T]here is one really important part of this case that I want to acknowledge. It's a shame that the people who actually make this stuff are not in court today. It sucks. But that's part of the system. That's the risk people take. I'm not here to offer arguments that these are criminal masterminds making this drug. It's a shame. There's probably some rich person in New York that probably [Appellant] works for who's like, oh, man, my -- . . . . And he's there and unfortunately these people are here. I

- 14 -

acknowledge that. But that's the system. This is the system we live in. Everyone got a fair trial. And that's the risk that you take when you enter this business.

. . . .

My colleague, [Appellant's counsel], and I wrote this down[,] specifically asked you if someone you love sat there and was looking at the evidence in this trial is that enough to convict. How would you feel? He actually asked that twice, his question not mine. Based on that I submit to you a question. If your loved one bought some of that drug, how would you feel?

Appellant's brief at 27-29 (quoting N.T. Jury Trial, 5/5/23, at 128, 140, 144-45, 147).

The trial court concluded that "when [the] Commonwealth's statements are reviewed in the full context in which [they] were made . . .[,] the Commonwealth did neither deliberately attempt to destroy the objectivity of the jury, nor create bias and hostility toward [Appellant]." Trial Court Opinion, 4/17/24, at 33. Rather, it determined that the Commonwealth was fairly responding "to attacks on the credibility of the Commonwealth's case." *Id*. at 34.

The trial court did not abuse its discretion. Appellant, in his closing argument, stated that his family was present throughout the trial, that the police did "shoddy" work, and asked the jurors to consider how they would feel "if someone you love were facing the same evidence." *See* N.T. Jury Trial, 5/5/23, at 117, 119, 122. The Commonwealth thus fairly rebutted these sentiments. It also drew a reasonable inference from the evidence when it posited that Appellant may have procured the fentanyl from someone in New

York where Appellant stated to Corporal Garcia that he could acquire four extra kilograms from New York. *Jones*, 191 A.3d at 835-36. Therefore, this argument is meritless.

Overall, the Commonwealth presented sufficient evidence for the jury to convict Appellant of PWID and conspiracy, and the trial court did not abuse its discretion in rejecting Appellant's requests to sever his trial from Canela, allowing opinion testimony from the expert witness, and determining that the Commonwealth did not make improper statements during closing arguments. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/6/2025