J-A10042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES A. LAWSON | : | |
| | : | |
| Appellant | : | No. 1727 EDA 2022 |

Appeal from the PCRA Order Entered June 24, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-CR-0000834-2015

BEFORE:   PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 6, 2023**

James A. Lawson ("Appellant") appeals from the order entered by the Court of Common Pleas of Philadelphia County dismissing without an evidentiary hearing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Herein, Appellant alleges that prior counsel provided ineffective assistance by failing to file a post-sentence motion asserting that the verdict was against the weight of the evidence and by failing to raise an issue on direct appeal challenging the discretionary aspects of his sentence.  After careful review, we affirm.

This Court's memorandum decision in ***Commonwealth v. Lawson***, No. 2832 EDA 2019,  (unpublished memorandum) (Pa. Super. filed February 9, 2021), in which we affirmed judgment of sentence, summarized the facts and

_____

[*] Former Justice specially assigned to the Superior Court.

J-A10042-23

the procedural history associated with Appellant's trial and direct appeal, as

follows:

> In January of 2015, [the] complainant . . . 19 years-old was dating Appellant's son . . . . On January 5, 2015, [the complainant] and [Appellant's son] started the evening at [the complainant's] mother's house, before leaving for Appellant's house. At Appellant's, [the complainant] and [Appellant's son] watched television and ate dinner, while Appellant was in his room.
>
> After dinner, [the complainant] was in the kitchen with [Appellant's] son, who was doing dishes, listening to music with his headphones in. Appellant called [the complainant] to his room and she went to see what he wanted.
>
> When [the complainant] entered the bedroom, Appellant said he wanted to talk and told her to sit on the couch in the bedroom. He then closed the door, locked it, and put something under the door. [The complainant] got up and tried to leave the room, but Appellant stood between [her] and the door and pushed her back. Appellant then pushed [the complainant] on to the bed, pinned her down with his legs and attempted to put his penis in her mouth, whereupon she bit his penis.
>
> At that point, Appellant pulled off [the complainant]'s pants and underwear and inserted his penis in her vagina. [The complainant] tried to scream, but Appellant was covering her mouth with his hand. The radio was on in the room, and [the complainant] could hear [Appellant's son] in the kitchen doing the dishes.
>
> At some point[,] there was a knock at the door, which Appellant ignored. Upon a second knock, Appellant got up and opened the door to [Appellant's son]. [The complainant] told [Appellant's son] what happened, [Appellant and his son argued], then [the complainant] and [Appellant's son] returned to [the

- 2 -

complainant]'s mother's home. Once at her mother's house, [the complainant] told her mother what had happened and her mother called the police.

While on patrol on January 6, 2015, at approximately 2:01 AM, police officers [Thomas] Dempsey and [Shawn] Bossert received a radio call for a rape in progress . . . . Upon arrival, the officers were met by [the complainant's] mother. The officers observed [the complainant] sitting on the couch crying. [The complainant] told the officers that Appellant . . . had raped her, and [she] described the events. Also present in the room was [Appellant's son]. Officer Dempsey memorialized the information provided by [the complainant].

The officers then transported [the complainant] to Appellant's home, where she waited while he was brought out by police. [The complainant] was then taken to the Special Victim's Unit, where she was examined, and she gave a statement to Detective [Thomas] Martinka. DNA from Appellant was found in [the complainant]'s vagina and on her vulva.

Trial Ct. Op., 1/29/20, at 2-3 (record citations omitted).

. . . .

Appellant's first trial ended in a mistrial on August 3, 2018, after a jury was unable to reach a unanimous verdict. Following a second trial, the jury found Appellant guilty of rape by forcible compulsion and sexual assault but acquitted him of involuntary deviate sexual intercourse (IDSI) on October 18, 2018.[] The trial court sentenced Appellant to [an aggravated guideline range sentence of seven to fourteen years' confinement plus 4 years' probation on the rape by forcible compulsion charge and to an aggravated guideline range sentence of five to 10 years' confinement on the sexual assault charge, with both sentences ordered to run concurrently].[]

Appellant timely filed a post-sentence motion on September 5, 2019, seeking modification of his sentence. The trial court denied the motion on September 23, 2019.

> Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement challenging the weight of the evidence and the Commonwealth's failure to prove the complainant's lack of consent beyond a reasonable doubt. In a timely supplemental Rule 1925(b) statement, Appellant added a claim that the trial court erred in denying his *pro se* Rule 600 motion to dismiss.
>
> The trial court filed a responsive opinion concluding that: (1) the verdicts were not against the weight of the evidence; (2) the trial court was under no obligation to consider Appellant's *pro se* motions, nor would the court have granted the motion even if properly raised; and (3) the evidence was sufficient to establish the complainant's lack of consent. The trial court concluded that the judgment of sentence should be affirmed.

***Lawson***, ***supra***.

In Appellant's direct appeal to this Court, we agreed with the trial court's analysis and opinion on all issues and affirmed judgment of sentence. ***Id.*** at *7. Relevant for present purposes was our disposition of Appellant's weight of the evidence issue, where we determined that he had failed to preserve it before the trial court with either a written or oral motion seeking a new trial on this basis. ***Id.*** at *3 (citing ***Commonwealth v. Roche***, 153 A.3d 1063, 1071 (Pa. Super. 2017) (recognizing Rule 607(A) of the Pennsylvania Rules of Criminal Procedure requires an appellant to preserve a weight of the evidence challenge in a timely motion either prior to or post-sentence). Appellant filed no petition for allowance of appeal with the Pennsylvania Supreme Court.

On September 23, 2021, Appellant timely filed a first PCRA petition. The PCRA court appointed counsel who filed an amended PCRA petition on February 9, 2022, raising issues alleging that trial counsel had ineffectively failed to preserve on direct appeal claims challenging the weight of the

evidence and the discretionary aspects of his sentence. On June 24, 2022, the PCRA denied relief without a hearing. Appellant filed a timely notice of appeal on June 29, 2022.

Appellant raises the following issues for this Court's consideration:

1. Whether the PCRA court erred in denying Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition?

2. Whether the PCRA court was in error in not granting relief on the issue that counsel was ineffective for the following reasons[:] Counsel was ineffective for failure to file a motion for reconsideration of sentence[;] . . . and Counsel was ineffective for failing to file a post-verdict motion that the verdict was against the weight of the evidence.

Brief for Appellant, at 8.[1]

We review the PCRA court's denial of relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). We will not disturb the court's decision "unless

_____

[1] Appellant's Statement of Questions Involved contains a misstatement of his ineffective assistance of counsel claim as it relates to the discretionary aspects of his sentence. Specifically, at all relevant stages of Appellant's PCRA action, from the filing of his petition to presenting argument in his Brief for Appellant in the present appeal, he has challenged direct appeal counsel's failure to file a direct appeal challenging the trial court's denial of his counseled motion to reconsider sentence. In his statement of questions involved, however, the issue presented asks whether trial counsel ineffectively failed to file a motion for reconsideration of sentence. We disregard this framing of his issue as a misstatement, and we proceed to consider his preserved ineffectiveness issue directed at direct appeal counsel's election to forego challenging the trial court's denial of Appellant's motion to reconsider the discretionary aspects of his sentence.

- 5 -

there is no support for the findings in the certified record." ***Id.*** (quoting

***Commonwealth v. Larkin***, 235 A.3d 350, 355 (Pa. Super. 2020) (*en banc*)).

"Our scope of review is limited to the findings of the PCRA court and

the evidence of record, viewed in the light most favorable to the party who

prevailed in the PCRA court proceeding." ***Id***.

> [T]he PCRA court has the discretion to dismiss a petition
> without a hearing when the court is satisfied "that there are no
> genuine issues concerning any material fact, the defendant is not
> entitled to post-conviction collateral relief, and no legitimate
> purpose would be served by any further proceedings."
> Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's
> decision to dismiss a petition without a hearing, an appellant must
> show that he raised a genuine issue of fact which, if resolved in
> his favor, would have entitled him to relief, or that the court
> otherwise abused its discretion in denying a hearing."
> ***Commonwealth v. D'Amato***, 856 A.2d 806, 820 (Pa. 2004).

***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011).

Appellant raises claims of ineffective assistance of counsel. The

Pennsylvania Supreme Court has explained:

> [A] PCRA petitioner will be granted relief [for ineffective assistance
> of counsel] only when he proves, by a preponderance of the
> evidence, that his conviction or sentence resulted from the
> "[i]neffective assistance of counsel which, in the circumstances of
> the particular case, so undermined the truth-determining process
> that no reliable adjudication of guilt or innocence could have taken
> place." 42 Pa.C.S.[A.] § 9543(a)(2)(ii). "Counsel is presumed
> effective, and to rebut that presumption, the PCRA petitioner must
> demonstrate that counsel's performance was deficient and that
> such deficiency prejudiced him." ***Commonwealth v. Colavita***,
> 993 A.2d 874, 886 (Pa. 2010) (citing ***Strickland v. Washington,***
> 466 U.S. 668, 687 (1984)). In Pennsylvania, we have refined the
> ***Strickland*** performance and prejudice test into a three-part
> inquiry. ***See Commonwealth v. Pierce,*** 786 A.2d 203, 213 (Pa.
> 2001). Thus, to prove counsel ineffective, the petitioner must
> show that: (1) his underlying claim is of arguable merit; (2)

- 6 -

counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali,*** 10 A.3d 282, 291 (Pa. 2010).

***Commonwealth v. Spotz,*** 84 A.3d at 311-12 (citations modified). "[C]ounsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise." ***Commonwealth v. Thomas***, 270 A.3d 1221, 1226 (Pa. Super. 2022).

"Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1042 (Pa. Super. 2007) (citation omitted). With respect to ineffective assistance of appellate counsel, "the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance." ***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014).

In Appellant's first ineffectiveness claim, he argues that direct appeal counsel was ineffective for failing to challenge the discretionary aspects of his sentence. Such a claim is cognizable under the PCRA. ***Commonwealth v. Sarvey***, 199 A.3d 436, 455 (Pa. Super. 2018).

To succeed on such a claim, a PCRA petitioner must demonstrate that the underlying sentencing issue has merit. ***See Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008) ("[I]f the PCRA court can determine from the record that the sentence was not excessive ... then there is no underlying merit to the ineffectiveness claim and the claim must fail."). The actual prejudice a petitioner must prove with this type of sentencing claim is

a showing of reasonable probability that a reviewing court on direct appeal would have awarded a reduction in his sentence if prior counsel challenged the discretionary aspects of his sentence. ***Commonwealth v. Paddy***, 15 A.3d 431, 442 (Pa. 2011).

In this regard, we bear in mind that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Barnes***, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*). We will only vacate a sentence falling within the guidelines when the application of the guidelines would be clearly unreasonable. 42 Pa.C.S.A. § 9781(c)(2). An "unreasonable" decision is "one that is irrational or not guided by sound judgment." ***Sarvey***, 199 A.3d at 456 (internal quotation marks and citation omitted).

Moreover, a court need not undertake a lengthy discourse to satisfy the requirement that it state its reasons for imposing sentence. ***Commonwealth v. Rush***, 162 A.3d 530, 544 (Pa. Super. 2017). Rather, "the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Id.*** (citation omitted). We presume a court that has the benefit of a PSI thus is apprised of all relevant sentencing criteria. ***Commonwealth v. Jones***, 942 A.2d 903, 908 (Pa. Super. 2008).

Appellant contends that his concurrently run, aggravated range guideline sentences reflected an abuse of the trial court's sentencing discretion. Specifically, Appellant contends that the court failed to consider

various mitigating factors at issue in his case, including his troubled and unstable home environment as a youth, where his parents suffered from mental health issues and physically abused him, and his own lengthy mental health history exacerbated by his chronic use of marijuana, cocaine, pills, and abusing alcohol. Although Appellant dropped out of school in eleventh grade, he did complete his GED in 1994. Brief for Appellant, at 17.

The record shows, however, that Appellant's sentencing hearing began with the court's acknowledgement of the mental health evaluation report, a presentence investigation ("PSI") report, and sentencing guideline forms. From there, the court entertained lengthy arguments made by both counsel, respectively,[2] and gave audience to Appellant's allocution offering continued denials of guilt as well as a history of his mental health issues and the claim that he led a law-abiding life when his medications were adjusted correctly. N.T., 8/27/19, at 1-35. Immediately prior to sentencing, moreover, the court acknowledged its contemplation of both the arguments and allocution as well as of the particular facts and circumstances of the case and sentencing memoranda submitted by both sides. N.T. at 35.

The trial court then made the following findings regarding mitigating and aggravating sentencing factors:

---

[2] Defense counsel frequently referred to Appellant's mitigating circumstances, including his prior homelessness, mental health issues including his schizophrenia, polysubstance abuse, his attainment of a GED despite his challenges, and his "relatively" good behavior except for his commission of two separate simple assaults in 2002 and 2006, respectively. N.T. at 9-20.

The Court: This Court finds as mitigating factors the defendant's history of homelessness, mental health challenges, his history from substance abuse and a number of familial crutches that are consistent with that. The defendant's limited number of previous convictions is already reflected in the guidelines through the Prior Record Score.

As aggravating factors, this Court finds disturbing that the defendant was in the position of relative authority when he committed this offense, howe he availed himself of this opportunity.

This Court also finds as an aggravating factor the defendant's lack of remorse. And I don't say that because he is not admitting his guilt, no one is expecting him to do that, within a number of other statements that he makes. This Court also considers as an aggravating factor the impact on the victim.

This Court also credits the Presentence Report in particular in its finding that the defendant is at significant risk for committing future offenses.

Particularly, when compounded with the sexual history as given by the defendant himself, wherein he admits to having engaged in unwanted touching of other girls by grinding on them without their consent at the age [of] 11. While that may not be necessarily the most dangerous thing, although inappropriate in many other ways . . ., the defendant's history has borne out in a way that confirms all the factors that show him to be a danger to society.

. . . .

We'll order a statement on health evaluation, dual diagnosis for treatment recommendations, which the defendant is to be compliant with throughout his incarceration.

And all of the following programming must be completed before the defendant is eligible for parole: Individual counsel, anger management, vocational training, parenting classes.

N.T. at 35-37.

This record reflects the trial court's full and informed consideration of mitigating and aggravating circumstances, including Appellant's mental health history and needs as well as the court's responsibility to protect the public. Supported, therefore, is the conclusion that the trial court considered all relevant sentencing factors and weighed those factors when imposing Appellant's sentence. *Boyer*, 856 A.2d at 154. Thus, even if direct appeal counsel had raised a challenge to the discretionary aspects of Appellant's sentence, we conclude there is not a reasonable probability that the result of his direct appeal would have been different. *Reed*, 42 A.3d at 319. Accordingly, Appellant's first ineffective assistance of counsel claim is without merit.

In Appellant's remaining claim, he maintains that trial counsel provided ineffective assistance by failing to file a post-sentence motion challenging the weight of the evidence. Regarding challenges to a verdict based on the weight of the evidence, we have observed:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of

discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007) (holding that an appellate court reviews a trial court's denial of a weight of the evidence claim for an abuse of discretion and stating that "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings" (citation omitted)).

When a weight claim "is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citation omitted).

Specifically, Appellant's weight claim centers on the allegedly inconsistent and incredible statements of Complainant made during the investigation and as a witness at trial. His "sampling" of such statements includes:

> Her testimony that she injured her right side during the rape, which conflicted with the treating physician's testimony that his notes stated she reported a left side injury;

Her response of "no" when the detective asked whether she was injured, but then following that with a claim of pain in her vagina;

Her report to police that her only words during the rape were, "no", which conflicted with her testimony that she also yelled her boyfriend's name three to four times;

Complainant never testified to a struggle, but the investigating detective testified it looked like a struggle had taken place;

Complainant testified that she and Appellant had met before, but Appellant's son testified the two had never before met;

Complainant testified Appellant pushed her onto the bed and grabbed her wrists, which was inconsistent with a police report she completed in which she checked "no" boxes to questions asking if she was pushed and if she was grabbed;

Complainant testified that she bit Appellant's penis but there is no photographic or documentary proof of this;

Complainant told the investigating police officer that Appellant ejaculated, told the detective hours later that she was not sure, then told the treating physician that Appellant ejaculated;

Complainant gave varied responses as to whether Appellant kissed her; and

Complainant had prior convictions involving dishonesty and had a motive to lie about the encounter because it involved her boyfriend's father.

Brief of Appellant at 18-19 (paraphrased).

A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa. Super. 2003) (citation omitted). Moreover, an *en banc* panel of this Court has stated:

- 13 -

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274–1275 (Pa. Super. 2013) (*en banc*).

Here, Appellant contends that "[h]ad the Superior Court considered this issue [on direct appeal], the Court would have found that the evidence was so inherently reliable [sic] that a verdict based upon it could amount to no more than surmise or conjecture." Brief for Appellant at 20. The Commonwealth counters that the identified inconsistencies are minor at best and, when viewed against not only the complainant's account of how Appellant isolated her, pinned her down, sexually assaulted and raped her, but also how she chose to subject herself to multiple law enforcement interviews, medical treatment, and a pelvic exam, such inconsistencies fail to rise to a level causing the verdict to shock one's sense of justice.

For its part, the trial court opines:

> The Superior Court "has long recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact,

- 14 -

is sufficient to convict a defendant, despite contrary evidence from defense witnesses." ***Commonwealth v. Diaz***, 152 A.3d 1040, 1047 (Pa. Super. 2016). . . . Assuming that there were contradictions or conflicts in the testimony, it is the role of the jury "to weigh the evidence and resolve conflicts therein." ***Commonwealth v. Story***, 383 A.2d 155, 167 (Pa. 1978). ***See also Commonwealth v. Ward***, No. 109 EDA 2019, 2018 Pa. Super. Unpub. LEXIS 4478, at *15 (Nov. 28, 2018). Resolving conflicts in the testimony is an "appropriate jury function and [an] appellant will not be heard to complain." Commonwealth v. Gardner, 416 A.2d 1007, 1009 (Pa. 1980). Here the jury was properly instructed on how to evaluate conflicting evidence. "Our law presumes that juries follow the court's instructions as to the applicable law." ***Commonwealth v. Hawkins***, 701 A.2d492, 503 (Pa. 1997).

[The trial court] observed the testimony of the complainant and heard from the corroborating/prompt complaint witnesses. The [trial court] found the complainant credible, and the behavior of the complainant and others following the incident supported her credibility. Under all the facts and circumstances of the evidence presented, [the trial court] is in no way shocked by the verdict, which was based upon the credible and not meaningfully impeached testimony of complainant.

Trial Court Opinion, 1/29/20, pp. 5-6.

Applying our standard of review, we discern no abuse of discretion in the trial court's reasoning. Finding no error below, therefore, we conclude there is no arguable merit to Appellant's claims that trial counsel provided ineffective assistance by failing to file a post-sentence motion raising a weight of the evidence claim challenging his convictions.

For the reasons stated herein, we find no abuse of discretion in the PCRA court's order denying Appellant's petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2023